IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 21, 2024 Session

## TEOFILA H. MOCNY v. RONALD G. MOCNY

**Appeal from the Chancery Court for Lawrence County**
**No. 19-18991          M. Caleb Bayless, Judge**
_____

**No. M2023-00737-COA-R3-CV**
_____

This is an appeal of a divorce case. Although we affirm in part and reverse in part, we also vacate several aspects of the trial court's judgment for the reasons stated herein and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, Vacated in Part, and Remanded.**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG and KRISTI DAVIS, JJ., joined.

Christina Hammond Zettersten, Brentwood, Tennessee, for the appellant, Ronald Mocny.

Ben Boston, Cameron Hoffmeyer, Wyatt Boston, Ryan P. Durham, Charles W. Holt, Jr., Lawrenceburg, Tennessee, and William P. Holloway, Franklin, Tennessee, for the appellee, Teofila H. Mocny.

### MEMORANDUM OPINION[1]

### BACKGROUND AND PROCEDURAL HISTORY

This is a divorce case between the Appellant Ronald Mocny ("Husband") and the Appellee Teofila Mocny ("Wife"). Wife is originally from Peru but immigrated to the United States and married Husband in 2012. Upon their marriage, the parties initially lived

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

together in a house in Pennsylvania ("the Pennsylvania house") that Husband already owned. In 2013, the parties moved to Lawrenceburg, Tennessee, and purchased a home ("the Lawrenceburg house"). Later, they purchased a home in Spring Hill ("the Spring Hill house") as an investment.

Since moving to Tennessee, Husband has operated a hobby farm, but the parties are otherwise retired. Both Husband and Wife were in their seventies during the pendency of the trial litigation.

Wife initiated the divorce proceedings by filing a complaint in the Lawrence County Chancery Court ("the trial court"). In her complaint, Wife alleged that Husband was guilty of inappropriate marital conduct, but she also pled, in the alternative, that irreconcilable differences had arisen. Husband later answered Wife's complaint and also asserted a counterclaim for divorce. For his part, Husband alleged that there were irreconcilable differences, but he alternatively asserted that Wife was guilty of inappropriate marital conduct.

The divorce proceedings were suspended on a couple of occasions pursuant to Tennessee Code Annotated section 36-4-126 to allow for an attempt at reconciliation between the parties, but ultimately, the case proceeded to trial.

Following trial, on April 25, 2023, the trial court entered its "Final Decree of Divorce, Memorandum and Judgment." As to the first question that should be determined at the outset of a divorce case, i.e., "to whom the divorce should be awarded or whether the parties should be declared divorced in accordance with Tenn. Code Ann. § 36-4-129," *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998), the trial court's order was internally inconsistent. At one place in the order, the trial court appeared to indicate that it was granting Wife a divorce on the ground of inappropriate marital conduct. Yet, in another portion of its order, the court stated that the parties "shall be declared to be divorced . . . pursuant to Tenn. Code Ann. § 36-4-129."[2]

The murkiness of this threshold status issue notwithstanding, the trial court's order proceeded to classify certain property as marital or separate and then effectuate a division of the marital estate. As is relevant to this appeal, the trial court held that both the Lawrenceburg house and the Spring Hill house were marital property. Whereas the Lawrenceburg house was valued by the trial court at $550,000, the Spring Hill house was

---

[2] Tennessee Code Annotated section 36-4-129(b) provides as follows:

> The court may, upon stipulation to or proof of any ground of divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce or if a divorce is to be granted on the grounds of irreconcilable differences, declare the parties to be divorced, rather than awarding a divorce to either party alone.

valued at $350,000. As part of its order, the trial court also specifically valued farm equipment that was deemed to be marital property, determined that a particular credit union account ("the UECU account") was Wife's separate property, and valued the Pennsylvania house—which was Husband's separate property—at $298,000.

Of note, when dividing the marital estate between the parties, the trial court took into account that Husband was, according to the court, "guilty of dissipation of marital assets." Additionally, the trial court stated that it had considered the total amount of attorney's fees and expenses Wife had paid in connection with the proceedings.

The trial court's order also awarded Wife transitional alimony in the amount of $550 per month for a period of five years. According to the trial court, the findings it had made in connection with the division of marital property also applied to its consideration of an award of alimony. Further, the trial court awarded Wife attorney's fees as alimony in solido. This appeal followed.

## DISCUSSION

Husband raises several discrete issues on appeal. His raised issues are as follows:

1.      Whether the trial court abused its discretion by improperly classifying marital property as separate property.

2.      Whether the trial court abused its discretion by improperly classifying separate property as marital property.

3.      Whether the trial court abused its discretion by improperly valuing marital property.

4.      Whether the trial court abused its discretion by inequitably dividing the parties' assets.

5.      Whether the trial court abused its discretion by awarding alimony to wife.

6.      Whether Husband should be awarded his attorney fees.

As discussed herein, we do not discern any error with the classification and valuation issues lodged by Husband in this appeal. We do, however, conclude that a number of considerations dictate that the trial court's division of property be vacated. In turn, we conclude that the trial court's awards of alimony should also be vacated.

To briefly address the classification and valuation issues with which we find no

error, we note that the argument section of Husband's brief appears to take specific umbrage at the following: (1) the classification of the UECU account as Wife's separate property, (2) the determination that the entire value of the Lawrenceburg house was marital property, (3) the valuation of the Lawrenceburg house, (4) the valuation of the Spring Hill house, (5) the valuation of certain farm equipment, and (6) the valuation of the Pennsylvania house.

Regarding the UECU account, we find no error in the trial court's holding that the account was Wife's separate property. We note, as Wife has emphasized on appeal, that Husband claimed no interest in this account in his "Sworn Statement of Parties' Separate and Joint Assets and Liabilities." This sworn statement was admitted as an exhibit at trial. Likewise, a sworn statement of assets from Wife, which was also admitted as an exhibit, referenced the account as one belonging solely to Wife, in contrast to other assets she listed as being "Marital."[3]

In turning to Husband's grievance concerning the trial court's decision to classify the entirety of the Lawrenceburg house value as marital property, we note that the following findings informed the trial court's action: that the house was acquired during the marriage and that each party contributed to it; that the property was "deeded to both parties jointly"; and that the funds used to purchase the property were "inextricably mingled with marital property prior to purchasing." Here, there is no dispute that the Lawrenceburg house was purchased during the marriage and titled jointly to the parties, and Husband's testimony reflected that a joint account of the parties had paid for property taxes and insurance on the Lawrenceburg house. In light of these facts and the balance of the trial court's findings on the issue, we find no error in the trial court's classification decision. "[A]s a general matter, a marital residence acquired by the parties during the marriage and owned by the parties jointly should be classified as marital property." *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *5 (Tenn. Ct. App. Sept. 1, 2006).

---

[3] Notwithstanding this referenced evidence that was before the trial court, Husband criticizes the trial court's holding by arguing that supposed marital assets were comingled among undisputed separate property that was in the UECU account. Namely, although the trial court focused on the fact that the UECU account "was used by the Wife for the deposit of funds . . . from the sale of her separate property," Husband has argued that certain other funds and proceeds, supposedly constituting marital property, were also put into the UECU account at issue. Husband's argument on this matter suffers from a couple of problems from a briefing perspective. First, as far as any invoked legal support goes, Husband technically fails to proffer any authority supporting the notion that these other funds and proceeds should be considered "marital" and not "separate" property, outside of referencing a nonexistent statutory provision. (Incidentally, as to one set of the complained-of funds/proceeds, Wife has in contrast invoked authority referencing such moneys as not being subject to legal process.) In addition, as to another set of funds/proceeds focused on by Husband, he further does not actually cite to any support in the record to substantiate that such funds/proceeds were in fact deposited into the UECU account. Although he does offer a citation to the record on this matter, Wife has aptly noted that, in the portion of the transcript referenced by Husband, "nowhere therein did [W]ife testify to what [H]usband represents in his brief."

Aside from the evidence that supported the trial court's decision, the trial court's treatment of the Lawrenceburg house as marital property was itself not inconsistent with one of the positions Husband advanced during the trial. Notably, at the opening of trial, Husband's counsel stated as follows concerning Husband's position on the classification of the Lawrenceburg house and Spring Hill house: "[W]e have a case of either they're both marital or they're both separate property . . . ." Counsel later noted that "they both were treated as a marital property."[4] Here, of course, the trial court did ultimately classify both the Lawrenceburg house and the Spring Hill house as marital property. There is no error here.

As for the valuation of the Lawrenceburg house, we note that certain evidence valued the house at just over $518,000; other evidence valued the house at $550,000. There is thus no error in the trial court's decision to value the house at $550,000.[5] Indeed, "[w]hen valuation evidence is conflicting, the court may place a value on the property that is within the range of the values represented by all the relevant valuation evidence." *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007) Likewise, there is no error in the trial court's valuation of the Spring Hill house at $350,000, as that value also fell within the range of valuation evidence offered on the subject. Although Husband testified that it would be fair to value the Spring Hill house at $400,000, Wife testified that the value was "295, three, 300,000 more or less." Moreover, in Wife's sworn statement of assets, she placed a value of $294,500 on the Spring Hill house.

The same result obtains from our review of Husband's grievance concerning the trial court's valuation for marital farming equipment. The court's value of $25,000 for that equipment fell within the range of valuation evidence offered by the parties on the issue, and thus, we discern no error.

As for Husband's argument regarding the valuation of the Pennsylvania house, which is undisputedly his separate property, we note that Husband's argument on the matter is technically not embraced by any of his raised issues for review. In this respect,

---

[4] Moreover, later, at the close of trial, Husband's counsel argued in part as follows concerning the Lawrenceburg house:

> Now, is it marital? I mean, probably. . . . I'm not going to stand up here and try and tell you that it's not, as much as I don't want it to be and my client doesn't want it to be. It was the marital residence. It is titled in both of their names. It's probably . . . marital.

[5] We also specifically highlight the following exchange that occurred during Husband's testimony at trial:

> Q. Okay. You're just willing to agree to whatever she said [the Lawrenceburg house] was worth, but if you want to say it's worth 550 [thousand] that's fine, isn't it?
>
> A. Yes.

we specifically observe that Husband raised no issue regarding the valuation of any separate property, which technically subjects his argued concern pertaining to the Pennsylvania house to waiver. Regardless, there is no merit to Husband's contention that the Pennsylvania house was improperly valued. The valuation of the Pennsylvania house—fixed by the trial court at $298,000—fell within the range of the valuation evidence presented at trial. As Husband's counsel had argued before the trial court when referencing this evidence: "We estimated 250,000, they said 298,000, it's somewhere in there. It's very close."

We now shift our attention to the trial court's marital estate division. Although Husband has discussed various points in connection with his larger argument that the trial court's division of marital property was inequitable, much of his argument is predicated on the alleged classification and valuation concerns discussed above. Although we need not revisit those specific matters here, there are a couple of objections that Husband has raised with respect to the trial court's estate division analysis that are deserving of our present attention. First, we observe that Husband has challenged the trial court's finding that he was "guilty of dissipation of marital assets." This finding by the trial court does not directly mention what the alleged dissipation at issue was, other than to include a parenthetical suggesting that the dissipation was "addressed above." Husband has suggested that the supposed dissipation contemplated by the court seemingly relates to a prior finding in the order that one credit union account was marital property, a finding which the trial court noted was based on evidence that "Husband liquidated and/or moved assets from joint accounts of the parties and into an individual accounts [sic] held and accessed only by him." Husband has further argued, however, that "there was no finding that Husband had made any wasteful expenditures," and he has noted that the funds in the credit union account referenced by the trial court "were still available for equitable distributions at the time of the divorce and therefore could not possibly be found to be dissipated." Given the limited findings in the current order, we agree with Husband on this matter. As we have noted before:

> **The concept of dissipation is based on waste**. *Ward v. Ward,* No. W2001–01078–COA–R3–CV, 2002 WL 31845229, at *3 (Tenn.Ct.App. Dec.19, 2002) (No Tenn. R.App. P. 11 application filed). Dissipation of marital property occurs when one spouse uses marital property, frivolously and without justification, for a purpose unrelated to the marriage and at a time when the marriage is breaking down. *See, e.g., In re Marriage of Cerven,* 317 Ill.App.3d 895, 252 Ill.Dec. 93, 742 N.E.2d 343, 348 (2000); *Goodman v. Goodman,* 754 N.E.2d 595, 598 (Ind.Ct.App.2001); *Allison v. Allison,* 160 Md.App. 331, 864 A.2d 191, 195 (2004); *Kittredge v. Kittredge,* 441 Mass. 28, 803 N.E.2d 306, 317 (2004); *Budnick v. Budnick,* 42 Va.App. 823, 595 S.E.2d 50, 58 (2004). **Dissipation involves intentional or purposeful conduct**, *Stock v. Stock,* 693 So.2d 1080, 1084 (Fla.Dist.Ct.App.1997); *K. v. B.,* 13 A.D.3d 12, 784 N.Y.S.2d 76, 90 (2004), **that has the effect of**

- 6 -

**reducing the funds available for equitable distribution**.

*Altman v. Altman*, 181 S.W.3d 676, 681–82 (Tenn. Ct. App. 2005) (emphases added).  If, in fact, the trial court was basing its dissipation finding on Husband's mere movement of funds to the referenced credit union account, we note that the trial court divided that account as marital property in connection with the divorce.  Moreover, there is no finding that Husband "wasted" any funds or that the funds available for equitable distribution had been actually reduced by Husband's actions.  The court's current order simply does not support the notion that Husband dissipated any marital funds, and in this respect, with no other illumination being provided by the order as to where and how any dissipation occurred, the court's finding of dissipation is hereby reversed.[6]

Another part of the trial court's estate division analysis that is deserving of attention is the court's reliance on the attorney's fees and expenses supposedly paid by Wife.  In relevant part, the court noted specifically as follows on this subject when dividing the marital estate:

> The Court does consider the total amount of attorney's fees and expenses paid by the Wife in connection with these proceedings, and the Court did not hear proof in relation to the Husband.  The Court does find these fees necessary and reasonable pursuant to Rule 1.5 of the Tennessee Rules of Professional Conduct.

Husband has complained that he was not able to object to Wife's fees "due to the affidavit not being filed with the trial court until . . . more than thirty (30) days after the filing of the Final Decree and thus after the filing of the Notice of Appeal."  Based on our review of the record, we cannot say that this specific complaint of Husband's is without merit.  Indeed, although we observe that a fee affidavit was filed by Wife in this case, said filing occurred on June 7, 2023, well *after* the April 25, 2023, judgment of the trial court was entered.

Although it was acknowledged by Wife's counsel at oral argument that there was no formal evidence of record of Wife's attorney's fees at the time the trial court's order was entered, Wife has argued on appeal that a copy of the fee affidavit was submitted to Husband's counsel contemporaneously with a copy of proposed findings of fact and conclusions of law that she submitted to the trial court.  Notably, though, Wife provided no citation to the record in her brief to support this supposed fact, and as far as we can discern, there is nothing to substantiate that Husband ever received, prior to the entry of judgment, any fee affidavit in support of Wife's attorney's fees, nor was he ever given an opportunity to object to the amount of the fees.[7]

---

[6] In connection with our decision on this matter, we note that Wife's appellate brief does not appear to respond to Husband's argument about dissipation.

[7] Although there still remains no indication that Husband actually received contemporaneous notice

Thus, aside from the technical fact that there does not appear to have been any formal evidence of record regarding Wife's fees contemporaneous to the trial court's reliance upon same, there is not any indication that Husband even had contemporaneous notice of any information that was apparently then being relied upon as "evidence." This is problematic.

In light of the above concerns regarding attorney's fees and the trial court's dissipation finding, both of which appear in connection with the trial court's estate division analysis, we hereby vacate the trial court's division of the marital estate and remand that matter for reconsideration. In connection with our remand of this case, we do not foreclose the trial court from taking into account the amount of attorney's fees and expenses paid by the parties in connection with the proceedings, but such consideration should only follow appropriate notice regarding what *evidence* is actually being considered. In this vein, it is within the discretion of the trial court to reopen the proof on the subject of attorney's fees. As for the subject of dissipation, if there was some other contemplated dissipation than what the current order admits of, the trial court should so specify in its order on remand. As it is—as we noted above—the trial court's current order simply does not support the notion that Husband dissipated any marital funds.

In further connection with our remand to the trial court for reconsideration of the estate division, we also direct the trial court to be more thorough in its examination of the parties' respective assets. Although the trial court did claim to consider the "value of the separate property of each party" as is appropriate when making an equitable division of marital property pursuant to Tennessee Code Annotated section 36-4-121(c), *see* Tenn. Code Ann. § 36-4-121(c)(6), we observe from our review of the order that the trial court's engagement with this subject was only in general terms, and the trial court's order did not even mention certain assets the existence of which do not appear to be in dispute.[8] For certain other items of separate property that were mentioned by the court, no value was assigned.[9] Further specific consideration of the separate assets of the parties on remand will provide greater assurance that the actual total value of the parties' separate property holdings have, in fact, been thoroughly and appropriately considered.

---

of any fee affidavit prior to the entry of judgment, we surmise (based on the court's discussion of Wife's fees) that some type of fee affidavit was in fact tendered *to the trial court* as represented by Wife. Whether such an affidavit was, in its entirety, the same affidavit that was later filed, we can only speculate. It is true, though, that the trial court's order references an amount of attorney's fees that coincides with the amount of fees attested to in connection with the affidavit that was later filed.

[8] A table prepared by Husband on appeal pursuant to Rule 7 of the Rules of the Court of Appeals of Tennessee details multiple "Separate Property" assets that were "Not listed" by the trial court in its judgment. Wife's brief reflects that she "essentially agrees with Husband's Rule 7 [table]," with the exception of a particular value Husband provided for the Lawrenceburg house.

[9] By way of example, the trial court did not place a value on the farm equipment that was deemed Husband's separate property.

In light of our vacating of the trial court's division of the marital estate, we in turn vacate its awards of alimony and remand for reconsideration. *Trezevant v. Trezevant*, 568 S.W.3d 595, 624 (Tenn. Ct. App. 2018) ("Because the trial court may award spousal support only after the court has equitably divided the parties' marital property, the awards of alimony are vacated and remanded for reconsideration in light of a proper valuation and distribution of the marital estate."); *Beyer v. Beyer*, 428 S.W.3d 59, 84 (Tenn. Ct. App. 2013) ("In light of our remand to the trial court to reconsider its distribution of the parties' marital estate, however, the trial court must reconsider its awards of alimony as well."). We leave it to the trial court's discretion as to whether it chooses to reopen the proof on the subject. *See, e.g., Lindsley v. Lindsley*, No. M2019-00767-COA-R3-CV, 2020 WL 7029361, at *11 (Tenn. Ct. App. Nov. 30, 2020) ("We are mindful of the fact that time does not stand still, and we leave it to the trial court's discretion as to whether it chooses to reopen the proof on this issue.").

For the sake of completeness and clarity, we also direct the trial court to address one other matter in connection with our remand of the case. Specifically, the trial court should readdress and provide clear findings on whether Wife is being granted a divorce or whether the parties are being declared divorced pursuant to Tennessee Code Annotated section 36-4-129. As noted earlier in this Opinion, the trial court's current order appears to be internally inconsistent on this issue.

Lastly, in closing our discussion, we briefly address the subject of appellate attorney's fees. In the exercise of our discretion, we decline to award either Husband or Wife any appellate attorney's fees.[10]

## CONCLUSION

In light of the foregoing, the judgment of the trial court is affirmed in part, reversed in part, and vacated in part, and the case is remanded for such further proceedings as are necessary and consistent with this Opinion.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

---

[10] Wife's request for appellate attorney's fees is waived. Namely, whereas Wife requests appellate attorney's fees in the argument section of her brief, she does not designate this as an issue on appeal. "We consider an issue waived where it is argued in the brief but not designated as an issue." *Childress v. Union Realty Co., Ltd.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002).